The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br>2. JOSE GARCIA CORONA,<br>Defendant. | NO. CR25-091 TL<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Sentencing: April 22, 2026, at 1:30 p.m. |

For months in 2024 and 2025, Jose Garia Corona actively engaged in drug trafficking activities. He acted as a wholesale source of supply of controlled substances, retail-level distributor, and hub between other drug trafficking organization members, connecting traffickers to other sources of supply and other involved parties. Moreover, given his lack of a substance use disorder, he appears to have undertaken these activities primarily for his financial gain.

For Garcia Corona's actions, the government respectfully recommends the Court sentence him to 30 months of imprisonment, a variance below the low-end of his Guidelines range, to be followed by a term of supervised release of three years. This sentence is sufficient, but not greater than necessary to carry out the goals of sentencing.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. INVESTIGATION BACKGROUND

In 2023, after incidents of drug trafficking-related violence in and around homeless encampments in Seattle's Chinatown-International District and the greenbelt adjacent to Interstate-5, commonly known as the "Jungle," the Federal Bureau of Investigation ("FBI") and the Seattle Police Department ("SPD") began a narcotics trafficking investigation into individuals distributing controlled substances in these areas. Presentence Investigation Report ("PSR") ¶ 26. During the investigation, through the use of a variety of investigative techniques, including court-authorized Title III wiretaps, agents were able to determine that members of the Jungle Drug Trafficking Organization (DTO) distributed controlled substances to some of the most marginalized members of society. *Id.* The investigation identified additional groups trafficking in controlled substances. Jose Garcia Corona was identified as a cocaine trafficker and an individual who arranged trafficking activities on behalf of others. Dkt. 146. ¶ 8.

## II. OFFENSE CONDUCT

In September 2024, investigators intercepted a call between Garcia Corona and co-defendant Daniel Ibarra Loera. Dkt. 146 ¶ 8(c). In the call, Ibarra Loera, a major trafficker, inquired whether Garcia Corona had any "medicine" [unidentified controlled substance] for sale. *Id*. Ibarra Loera told Garcia Corona he had kilograms of cocaine for sale at $15,000 per kilogram. *Id*. Garcia Corona said his friend, co-defendant Leonardo Rojas Cruz, moved cocaine kilograms quickly but that he needed a good price. *Id*. Shortly after the call concluded, the two spoke again and Garcia Corona asked Ibarra Loera to meet with Rojas Cruz later that evening. *Id*. The investigation revealed this call was not an isolated event, and, in fact, Garcia Corona was involved in the conspiracy for an extended period of time.

In February 2025, investigators intercepted Garcia Corona communicating with co-defendant Giovanni Antonio Garduno Garcia. *Id*. ¶ 8(d). Garcia Corona said he was


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

experiencing difficulty communicating with one individual, and he asked if Garduno Garcia wanted him to check with other sources of supply. *Id*. The two then discussed, amongst other things, the price of kilograms of cocaine from various sources and how it ranged from $15,500 to $17,000 per kilogram. *Id*.

Also in February, Garcia Corona spoke with an unindicted co-conspirator, who inquired about obtaining controlled substance. *Id*. ¶ 8(e). The unindicted co-conspirator asked about quantities of controlled substances Garcia Corona had for sale as well as pricing. *Id*. Communications intercepted after the call indicated Garcia Corona met with his buyer later that same day.

In March 2025, Garcia Corona spoke with another controlled substance buyer. *Id*. ¶ 8(f). In that call, he discussed the price of an ounce of cocaine. *Id*. Garcia Corona boasted that his cocaine was of particularly high quality. *Id*.

These intercepted calls show Garcia Corona played an important role for the drug trafficking conspiracy ranging from distributing to individual users to supplying large quantities of cocaine to other co-conspirators and introducing parties to further build-out the conspiracy network. This was all undertaken to trafficking more controlled substances for Garcia Corona's financial gain.

## III. PROCEDURAL POSTURE

On May 14, 2025, the grand jury returned an Indictment charging Garcia Corona with *Conspiracy to Distribute a Controlled Substance*, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 846. Dkt. 1.

On May 29, 2025, Garcia Corona made his initial appearance and entered a plea of not guilty. Dkt. 32.

On December 18, 2025, Garcia Corona entered a plea of guilty to *Conspiracy to Distribute a Controlled Substance*, a lesser included charged in Count 1 of the Indictment, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

846. Dkt. 146.

## IV. STATUTORY PENALTIES

The offense of *Conspiracy to Distribute a Controlled Substance,* in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, is punishable by a maximum term of imprisonment 20 years, a fine of up to $1,000,000, a period of supervision following release from prison of at least three years, and a mandatory special assessment of one hundred dollars. PSR ¶¶ 77, 80, 85, and 86.

## V. SENTENCING GUIDELINES CALCULATION

The government concurs with United States Probation's calculation of Garcia Corona's criminal history score of zero. PSR ¶ 48. With a criminal history score of zero, Garcia Corona's Criminal History Category is I. *Id.* ¶ 49.

Pursuant to USSG §2D1.1(c)(7), because the offense involved at least two kilograms, but less than three and a half kilograms of cocaine, the base offense level is 26. PSR ¶ 36. A two-level decrease applies under USSG §§4C1.1(a)(1)-(11) as Garcia Corona is a zero-point offender. *Id*. ¶ 41. Because Garcia Corona demonstrated acceptance of responsibility and provided timely notification to the government of his intent to enter a plea of guilty, he should receive an additional three-level decrease. *Id.* ¶¶ 42-43. Garcia Corona's total offense level is 21, making his Sentencing Guidelines range 37-46 months. *Id.* ¶ 78.

## VI. FACTORS RELATED TO SENTENCING RECOMMENDATION

In sentencing the defendant, the Court considers not only the advisory sentencing range calculated under the United States Sentencing Guidelines, but also the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.

## VII. GOVERNMENT'S SENTENCING RECOMMENDATION

After considering the advisory Sentencing Guidelines range and weighing the section 3553(a) factors, the government respectfully recommends a sentence of 30 months of imprisonment to be followed by a term of supervised release of three years. The section 3553(a) factors amply support the government's recommendation.

*Nature and Circumstance of the Offense*

The nature and circumstance of Garcia Corona's offense weigh in favor of the government's recommendation. The societal impacts of drug trafficking are profound. Drug trafficking's destructive impacts include community destabilization through attendant violence, public health impacts, and economic drains through the redirection of limited public resources to address both enforcement actions against the traffickers and treatment for users.

In this case, investigators intercepted Garcia Corona discussing the sale of controlled substances on multiple occasions. Garcia Corona touched on multiple facets of the drug trafficking industry; he acted as a source of supply for multiple parties, he was able to coordinate the sale of substantial quantities of controlled substances, he introduced other parties to increase the network of actors and increase his financial benefits, and he acted as a distributor to what appears to be individual users. Moreover, the intercepts show Garcia Corona was involved in the conspiracy for an extended period of time.


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Additionally, while fentanyl receives the lion's share of coverage when discussing drug overdoses, cocaine can also have deadly consequences. In 2025, the King County Medical Examiner's Office reported that there were 218 deaths that involved cocaine, representing 24% of all overdose deaths in King County.[1] This makes cocaine the third deadliest drug in King County.

The nature and circumstances of Garcia Corona's drug trafficking activities weigh in favor of the government's recommended sentence.

*History and Characteristics of the Defendant*

The government's recommended sentence also appropriately accounts for Garcia Corona's history and characteristics.

While Garcia Corona did not grow up in an affluent family, he nonetheless grew up in a family with two parents and multiple siblings. PSR ¶¶ 57-58. He struggled in school and needed to help support his family at a young age, which prompted his emigration from Mexico. *Id*. ¶¶ 57-59. Despite his limited education, he found work in various industries in California, Washington, and Alaska. *Id*. He married and had three children with his wife, while fathering her children from a prior relationship. *Id*. ¶ 61. He rarely consumed alcohol and only consumed cocaine every month or two for about a year and a half before he was arrested. *Id*. ¶ 69.

The government's recommended sentence appropriately accounts for the circumstances of Garcia Corona's youth. It also accounts for the fact that Garcia Corona had a long history of working and thus had economic opportunities available to him when he was engaged in the conspiracy. This recommendation further accounts for the fact that Garcia Corona did not suffer from any substance abuse disorder or mental health disorder at the time of his involvement in this drug distribution conspiracy. Given Garcia Corona's

[1] https://kingcounty.gov/en/dept/dph/health-safety/medical-examiner/reports-dashboards/overdose-deaths-dashboard (last visited April 14, 2026).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lack of substance abuse disorder, it appears that his main motivation for distributing controlled substances was purely economic, putting his desire for income above the greater good of the community by distributing these deadly and additive substances.

*<u>The Need to Promote Respect for the Law, Afford Deterrence and Provide for a Just Punishment</u>*

The government's 30-month recommendation provides for a just sentence, promotes respect for the law, and affords deterrence to Garcia Corona and others who would engage in drug trafficking activities.

An eleven-month sentence—effectively the sentence recommended by United States Probation—provides little specific deterrence to Garcia Corona. It provides even less general deterrence to others who may engage in the enterprise of trafficking in controlled substances. Such a sentence communicates that the distribution of harmful, and potentially deadly, substances for one's financial gain carries minimal risk of consequence, despite the existence of laws penalizing such activities because of the impact such activities have on the lives of users, families of users, and society as a whole.

In contrast, the government's recommendation strikes the correct balance of the section 3553(a) factors and provides deterrence to both Garcia Corona and others. While Garcia Corona could have been subject to enhanced penalties, including a 60 month mandatory minimum, under Title 21, United States Code, Section 841(b)(1)(B)[2] the government believes its recommendation results in a just sentence carefully tailored to consider the unique facts of Garcia Corona's history, while also ensuring his sentence results in deterrence for himself and others.

//

//

---

[2] The government allowed Garcia Corona to enter a plea of guilty to the lesser included offense.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*The Need to Avoid Unwarranted Sentence Disparity Amongst Similarly Situated Defendants*

The government's recommended sentence also avoids unwarranted sentence disparity amongst similarly situated defendants.

Appended to this sentencing memorandum is a chart outlining the procedural posture of Garcia Corona's co-defendants in this Indictment and a summary of their Sentencing Guidelines calculations. *See* Exhibit A – Sentencing Chart.[3]

The Court recently sentenced co-defendant Lopez Roblero to a sentence of twelve months and one day, which was effectively a sentence of time served. Dkt. 208. Unlike Lopez Roblero, who had a particularly traumatic childhood, Garcia Corona's childhood provides for less mitigation. Additionally, Lopez Roblero reported that he suffered from a substance abuse disorder that led to his involvement in the conspiracy. Dkt. 198 at 6.

In related cases, the Court has sentenced Theodore Nation to a term of imprisonment of 30 months and Aleksandr Kozodoy to a term of imprisonment of 36 months. *See* CR25-002 TL, Dkt. 141 and CR25-003 TL, Dkt. 43. In sentencing Nation and Kozodoy, the Court noted the circumstances of their childhoods, their mental health history, and illicit substance dependence. While Garcia Corona experienced negative experiences as a child, unlike Nation and Kozodoy, Garcia Corona never suffered from mental health disorders and substance use disorders.

The government believes its sentence recommendation ensures parity of sentencing amongst similarly situated defendants amongst related cases, with appropriate variations as unique characteristics dictate. Furthermore, the government's recommended sentence aligns with similarly situated defendants more broadly. According to the

---

[3] A chart showing the charged members of this Indictment and their relative roles is attached as Exhibit A for the Court's review. For defendants who have not been sentenced or are currently pending trial, the government has included its best estimate of each defendant's criminal history category, total offense level, and Guidelines range which are subject to change. The government also included its current sentence recommendations for those who have pled guilty.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Judiciary Sentencing Information (JSIN) data provided by Probation, of the 656 defendants with a Criminal History Category of I and a Total Offense Level of 21 who have been sentenced in the last five years, the mean sentence imposed is 28 months with a median sentence of 30 months. The government's recommended sentence here tracks with the median sentence of similarly situated defendants nationwide.

## VIII. CONCLUSION

For the above argued reasons, the government respectfully recommends a custodial sentence of 30 months to be followed by a term of supervised release of three years.

DATED this 15th day of April, 2026.

Respectfully submitted,

*s/ Brian J. Wynne*
BRIAN J. WYNNE
CASEY S. CONZATTI
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-2268
Fax: (206) 553-4659
E-mail: Brian.Wynne@usdoj.gov