Judge Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br><br>DANIEL IBARRA LOERA,<br>Defendant. | NO. CR25-091 TL<br><br>**PLEA AGREEMENT** |

The United States, through Assistant United States Attorneys Casey S. Conzatti and Brian J. Wynne of the Western District of Washington and Daniel Ibarra Loera and Ibarra Loera's attorney James Curtis enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in a Superseding Information.

2. **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Superseding Information.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the Superseding Information, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

b. Possession of a Firearm in Furtherance of a Drug Trafficking Offense, as charged in Count 2 of the superseding Information, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

c. Conspiracy to Commit Money Laundering, as charged in Count 3 of the superseding Information, in violation of Title 18, United States Code, Section 1956(h).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offenses.** The elements of the offenses to which Defendant is pleading guilty are as follows:

a. The elements of Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the Superseding Information, are as follows:

i. *First*, beginning at a time unknown, but within the past five years, and continuing until on or about May 29, 2025, there was an agreement between two or more persons to distribute controlled substances including cocaine and fentanyl;

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ii. *Second*, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

b. The elements of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, as charged in Count 2 of the Superseding Information, are as follows:

i. *First*, Defendant committed the crime of Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the Superseding Information, which is a drug trafficking crime; and

ii. *Second*, Defendant knowingly possessed a firearm; and

iii. *Third*, Defendant possessed the firearm in furtherance of that drug trafficking crime.

c. The elements of Conspiracy to Commit Money Laundering, as charged in Count 3 of the Superseding Information, are as follows:

i. *First*, beginning at a time unknown, but within the past five years, and continuing until on or about May 29, 2025, there was an agreement between two or more persons to commit the crime of money laundering[1]; and

ii. *Second*, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a. For the offense of Conspiracy to Distribute Controlled Substances, as charged in Count 1 of the Superseding Information: A maximum term of imprisonment of up to 20 years and a fine of up to $1,000,000, a period of

---

[1] The elements of money laundering are as follows: (1) a person conducted a financial transaction involving property that represented the proceeds of a specified unlawful activity, to wit drug trafficking, (2) the person knew that the property represented the proceeds of some form of unlawful activity, to wit drug trafficking, and (3) the person knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

supervision following release from prison of at least three years, and a mandatory special assessment of one hundred dollars

b. For the offense of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, as charged in Count 2 of the Superseding Information: A maximum term of imprisonment of up to life imprisonment and a mandatory minimum term of imprisonment of five years which must run consecutive to any other sentence imposed, a fine of up to $250,000, a period of supervision following release from prison of up to five years, and a mandatory special assessment of one hundred dollars

c. For the offense of Conspiracy to Commit Money Laundering, as charged in Count 3 of the superseding Indictment: A maximum term of up to 20 years of imprisonment, a period of supervision following release from prison of up to three years, a fine of up to $500,000, or twice the amount laundered and a mandatory special assessment of one-hundred dollars.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

5. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States, or may have consequences with respect to citizenship status if Defendant is a naturalized citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. In some instances, a criminal conviction may be grounds for revocation of naturalized citizenship status. Removal, de-naturalization, and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration or naturalized citizenship status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any consequences that Defendant's guilty plea(s) may entail, even if the consequence is Defendant's removal from the United States or loss of naturalized citizenship.

6. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in a plea of not guilty;

b. The right to a speedy and public trial before a jury of Defendant's peers;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

7. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9. **Statement of Facts.** Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts:

a. Beginning at a time unknown, and continuing until at least May 29, 2025, the defendant, Daniel Ibarra Loera, conspired with others known and unknown to distribute controlled substances, including cocaine and fentanyl, within the Western District of Washington.

b. The conspiracy, and Ibarra Loera's role as a source of supply in this Drug Trafficking Organization (DTO), is established by court-authorized interception of wire and electronic communications; surveillance; seizures of drugs and cash; search warrants; and other evidence, only some of which is outlined below.

c. As a source of supply of controlled substances for this DTO, Ibarra Loera supplied other members of the DTO with drugs and collected proceeds. Ibarra Loera would contact other members of the DTO and arrange to meet with


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

them to supply them with controlled substances in exchange for United State currency. Investigators were aware of these meetings, and Ibarra Loera's role in them, based on intercepted communications which occurred over cell phones used by Ibarra Loera. Investigators also observed Ibarra Lorea meet with redistributors on several occasions, consistent with intercepted communications.

d. On September 21, 2024, investigators intercepted a conversation between Ibarra Loera and his co-defendant Sang Su. Su asked Ibarra Loera if he had a "hard one" [one ounce of crack/cocaine]. Ibarra Loera confirmed that he did and that he had the "white one" [cocaine] and could sell it to Su for $600 an ounce. Ibarra Loera agreed to meet at 10th Avenue and South Jackson Street in Seattle's Chinatown-International District. Ibarra Loera and Su met later that day to complete the transaction.

e. On September 24, 2025, investigators intercepted a call between co-defendant Jose Garcia Corona and Ibarra Loera. During the call, Ibarra Loera asked if Garcia Corona knew anyone who had any "medicine" [fentanyl] because people were asking Ibarra Loera for it. Ibarra Loera then told Garcia Corona that he had the "things" [kilograms of cocaine] that were being sold for $15,000. Garcia Corona told Ibarra Loera that his friend [co-defendant Leonardo Rojas Cruz] moved "them" [kilograms of cocaine] quickly but that he needed a good price. Shortly after this call, Garcia Corona called Ibarra Loera back and asked if he would meet with his "friend" [Rojas Cruz] later that evening. Ibarra Loera agreed to meet with Rojas Cruz later in the day.

f. On September 25, 2025, Ibarra Loera called Su and told him that the "other one" [fentanyl] was going for $1,050 an ounce. Su asked if it is the good one, and Ibarra Loera confirmed. Ibarra Loera told Su that he had a sample of it that he could provide Su. Su and Ibarra Loera agreed to meet the following day.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g. On September 25, 2025, investigators intercepted a call between Ibarra Loera and Rojas Cruz. Rojas Cruz said that he was "Flaco's" [Garcia Corona's] friend. Rojas Cruz asked Ibarra Loera if he was able to "work" [provide narcotics] the following day. Ibarra Loera confirmed. Rojas Cruz stated that he was going to need a whole one [kilogram of cocaine]. Rojas Cruz and Ibarra Loera met the following day.

h. On September 27, 2025, investigators intercepted a call between Ibarra Loera and Rojas Cruz, where Rojas Cruz told Ibarra Loera that he was going to need "another one" [kilogram of cocaine], a "half of a whole one" [half kilogram of cocaine], and then "another half of one" [half kilogram of cocaine]. Rojas Cruz told Ibarra Loera that he was going to need two kilograms of cocaine in total.

i. On October 1, 2025, investigators intercepted a call between Ibarra Loera and Su. During the call, Su told Ibarra Loera that he needed "four" and asked to meet. Ibarra Loera agreed to meet Su at a business in Seattle's Beacon Hill neighborhood. Investigators established surveillance at the location and observed Su arrive in a blue Toyota Corolla and park next to Ibarra Lorea's vehicle. Investigators observed Su exit his vehicle and enter the passenger seat of Ibarra Loera's vehicle, and then exit a short period later. Su was pulled over by officers a short time later and his vehicle was impounded and searched pursuant to a warrant. Inside Su's vehicle investigators recovered four ounces of cocaine. Ibarra Loera admits that he possessed and sold the four ounces of cocaine to Su.

j. On October 2, 2025, investigators intercepted a communication between Ibarra Loera and co-defendant Giovanni Antonio Garduno Garcia. During the call, Garduno Garcia complained about the quality of the kilogram of cocaine that he had purchased from Ibarra Lorea previously. Garduno Garcia informed Ibarra Loera that he was receiving complaints from customers that the cocaine was


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not "hitting" [providing a high] them. Garduno Garcia told Ibarra Loera that he was receiving complaints from both people who were doing the "rock" [consuming crack/cocaine] and doing it "with their noses" [consuming powdered cocaine]. Ibarra Loera told Garduno Garcia that he had not received any complaints about the product.

k. On February 26, 2025, investigators intercepted a call between Ibarra Loera and co-defendant Oscar Omar Serrano Serrano. Ibarra Loera asked if Serrano Serrano still had some of those "things" [kilograms of cocaine] and if they were the "same" [same quality]. Serrano Serrano confirmed. Ibarra Loera told Serrano Serrano that he believed that Serrano Serrano gave them to him for "15," indicating that Serrano Serrano previously provided Ibarra Loera with a kilogram of cocaine for $15,000. Ibarra Loera and Serrano Serrano met shortly after this call to complete the transaction.

l. On May 29, 2025, investigators executed search warrants at a number of locations associated with members of the DTO, including Ibarra Loera's residence located at 24645 96th Avenue South, Kent, Washington. During the search of the Ibarra Loera's residence, investigators recovered approximately 270 gross grams of cocaine, 3,300 gross grams of marijuana, approximately $5,385 in U.S. currency, a Bulova wristwatch, six firearms with associated accessories and ammunition, body armor, and three vehicles. Ibarra Loera admits that the controlled substances recovered from his residence were possessed by him for the purpose of distribution to others. Ibarra Loera admits he knowingly conspired and agreed with his co-conspirators to distribute these controlled substances to others for profit. Ibarra Loera admits that the $5,385 in U.S. currency and the Bulova wristwatch are proceeds of the drug trafficking conspiracy.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

m. The firearms investigators recovered from Ibarra Loera's residence included a Springfield Hellcat 9mm pistol, an Superior Arms Rifle, a Taurus G3C 9x19 handgun, a Glock 9x19 handgun, a Glock 30S handgun, and a Springfield Armory SA-XD-40 handgun each with associated accessories and ammunition. Investigators also recovered two Kevlar vests from the residence. Ibarra Loera admits that the firearms, magazines, ammunition and Kevlar vests recovered from his residence facilitated the drug trafficking conspiracy. Ibarra Loera further admits that the firearms, magazines, and ammunition were possessed by him in furtherance of the drug trafficking conspiracy in that they were used to protect him, protect his controlled substances and protect the proceeds of his drug trafficking activities.

n. In total, Ibarra Loera admits that he is responsible for conspiring to traffic at least seven and a half kilograms of cocaine, and one ounce of fentanyl.

o. From January 1, 2020, through December 31, 2024, Ibarra Loera had no reportable wages at any business from the Washington Employment Security Department. The conspiracy to distribute controlled substances generated substantial cash drug proceeds, which Ibarra Loera agreed to launder through various means with his co-conspirators. Ibarra Loera admits as part of the conspiracy to launder drug proceeds, he engaged in monetary transactions designed to conceal the source, ownership, or source of the proceeds.

p. Specifically, Ibarra Loera admits he conspired with others known and unknown to purchase vehicles with drug proceeds and register those vehicles under the names of third parties. Investigators intercepted communications between Ibarra Loera and third parties discussing this conspiracy to launder drug proceeds. One example includes an intercepted call from October 5, 2025, where Ibarra Loera called an unindicted female co-conspirator (hereinafter "Unindicted Co-Conspirator #1"). During the call, Ibarra Loera told Unindicted Co-Conspirator


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

#1 that he was going to try and sell all the vehicles he had there, but he knew that it would be hard. Ibarra Loera told Unindicted Co-Conspirator #1 that the "white car" is still under "Chorejas'" name, and that Chorejas was not there anymore. Ibarra Loera continued by saying that he thought that Chorejas sold a utility trailer to Chorejas' friend and thinks that if he orders the white car's plates online, they would be mailed to that address. Unindicted Co-Conspirator #1 told Ibarra Loera that she believed that Chorejas can order the white car's plates online and Chorejas just needed to update the address of it and put in Ibarra Loera's address. Ibarra Loera stated that he thought it was still good that he had all those vehicle "there."

q. Investigators also intercepted communications between Ibarra Loera and a second unindicted female co-conspirator (hereinafter Unindicted Co-Conspirator #2). During a call that occurred on September 19, 2024, Unindicted Co-Conspirator #2 told Ibarra Loera that she already had the BMW's vehicle identification number and told Ibarra Loera to send the updated mileage of the BMW and maybe a picture of it to her and she would check to see if someone would buy it. Ibarra Loera told Unindicted Co-Conspirator #2 that he would send the information shortly. The next day, Ibarra Loera asked if he could meet with Unindicted Co-Conspirator #2 so she could sign the check. Unindicted Co-Conspirator #2 asked Ibarra Loera if he meant at the dealer [car dealership]. Ibarra Loera told Unindicted Co-Conspirator #2 that he could meet her wherever she was located. The two of them agreed to meet at a location. On October 9, 2024, Ibarra Loera called Unindicted Co-Conspirator #2 and told her that the BMW's mileage was "65" and that he owed about "36." On March 6, 2025, Ibarra Lorea called Unindicted Co-Conspirator #2 and asked if Unindicted Co-Conspirator #2 could help Ibarra Loera out with a signature on a car title. Unindicted Co-Conspirator #2 asked if the signature looked hard to do, and Ibarra Loera responded that it did not.


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

r. Investigators seized three vehicles from Ibarra Loera's residence (a 2023 Dodge Charger SRT Hellcat, a 2017 Cadilac CTS-V, and a 2010 Chevrolet Corvette ZR1 Coupe) and a fourth vehicle from his storage unit (a 2018 Audi RS3 Quattro), described more fully in paragraph 13, below. Ibarra Loera admits that he is the true owner of each of the vehicles, that each of these vehicles was purchased with proceeds from the drug trafficking conspiracy, and that each of these vehicles was involved in the money laundering conspiracy.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

10. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. A base offense level of 30 under USSG § 2S1.1(a) because the offense level for the underlying offense from which the laundered funds were derived is 30 based on the following provisions:

i. A base offense level of 30, as the relevant conduct involved at least at least 1,000 but less than 3,000 kilograms of converted drug weight pursuant to USSG § 2D1.1(c)(5);

b. A two-level increase pursuant to USSG § 2S1.1(b)(2)(B) because defendant was convicted under 18 U.S.C. § 1956; and

c. 60-month mandatory minimum, pursuant to USSG § 2K2.4.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12. **Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of imprisonment that is no higher than the low end of the sentencing guidelines as calculated by the Court at the time of sentencing. Defendant is free to make any recommendation permitted by law. Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

13. **Forfeiture of Assets.** Defendant understands the forfeiture of property is part of the sentence that must be imposed in this case.

Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, real or personal, that was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of *Conspiracy to*



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Distribute Controlled Substances*, the offense charged in Count 1 of the Superseding Information, as well as any property constituting, or derived from, any proceeds Defendant obtained, directly or indirectly, as the result of the offense. This property is subject to forfeiture pursuant to Title 21, United States Code, Section 853(a), and includes but is not limited to:

a. The following property, seized from 24645 96th Avenue S., Kent, Washington, 98030, a residence associated with Daniel Ibarra Loera:

(1) A 2023 Dodge Charger SRT Hellcat, Washington License CSK4107, VIN #2C3CDXL94PH502945, registered to Elizabeth Perez Garcia, seized while in the possession of Daniel Ibarra Loera;

(2) A white 2017 Cadillac CTS-V, Washington License CBN0320, VIN #1G6A15S69H0149957, registered to Oscar Vargas Corona, seized while in the possession of Daniel Ibarra Loera;

(3) A gray 2010 Chevrolet Corvette ZR1 Coupe, Washington License CGJ1552, VIN #1G1YN2DTXA5800015, registered to Alexis Cruz Lopez, seized while in the possession of Defendant Daniel Ibarra Loera;

(4) Approximately $5,385.00 in U.S. Currency, seized from various locations within 24645 96th Avenue S., Kent, Washington;

(5) A Bulova Wristwatch, colored yellow-gold with clear stones, seized from the garage of the residence located at 24645 96th Avenue S., Kent, Washington;

(6) A Glock 30S handgun, bearing serial number BTHY343, and any associated accessories and ammunition;

(7) A Glock 19 handgun, bearing serial number AGCP580, and any associated accessories and ammunition;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(8) A Taurus G3C handgun, bearing serial number ACB527669, and any associated accessories and ammunition;

(9) A Superior Arms SR-15 Rifle, bearing serial number 51346, and any associated ammunition;

(10) A Springfield Hellcat Pistol, bearing serial number BA538720, and any associated accessories and ammunition;

(11) A Springfield Armory SA-XD-40 Handgun, bearing serial number US262902, with two (2) loaded and 1 unloaded magazines, and any associated ammunition;

(12) Miscellaneous ammunition, magazines, and accessories; and

(13) Two (2) Kevlar vests;

b. A gray 2018 Audi RS3 Quattro, Washington License CAM9063, VIN #WUABWGFF6J1906566, registered to Alexis Cruz Lopez, seized while in the possession of Daniel Ibarra Loera from Public Storage Unit M005,10020 Martin Luther King Jr. Blvd South, Seattle, Washington; and

c. a sum of money reflecting the proceeds Daniel Ibarra Loera obtained from the offense.

Defendant also agrees to forfeit to the United States immediately all of his right, title, and interest in any and all firearms and associated ammunition involved in his commission of *Possession of a Firearm in Furtherance of a Drug Trafficking Offense*, the offense set forth in Count 2 of the Superseding Information. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1), by way of Title 28, United States Code, Section 2461(c), including but not limited to:

a. A Glock 30S handgun, bearing serial number BTHY343, and any associated ammunition;

b A Glock 19 handgun, bearing serial number AGCP580, and any associated ammunition;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. A Taurus G3C handgun, bearing serial number ACB527669, and any associated ammunition;

d. A Superior Arms SR-15 Rifle, bearing serial number 51346, and any associated ammunition;

e. A Springfield Hellcat Pistol, bearing serial number BA538720, and any associated ammunition; and

f. A Springfield Armory SA-XD-40 Handgun, bearing serial number US262902, and any associated ammunition.

Defendant also agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, involved in the commission of *Conspiracy to Commit Money Laundering*, the offense set forth in Count 3 of the Superseding Information. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1) and includes but is not limited to:

a. A 2023 Dodge Charger SRT Hellcat, Washington License CSK4107, VIN #2C3CDXL94PH502945, registered to Elizabeth Perez Garcia, seized from 24645 96th Avenue A., Kent, Washington, 98030, while in the possession of Daniel Ibarra Loera;

b. A white 2017 Cadillac CTS-V, Washington License CBN0320, VIN #1G6A15S69H0149957, registered to Oscar Vargas Corona, seized from 24645 96th Avenue A., Kent, Washington, 98030, while in the possession of Daniel Ibarra Loera;

c. A gray 2010 Chevrolet Corvette ZR1 Coupe, Washington License CGJ1552, VIN #1G1YN2DTXA5800015, registered to Alexis Cruz Lopez, seized from 24645 96th Avenue A., Kent, Washington, 98030, while in the possession of Defendant Daniel Ibarra Loera;

d. A gray 2018 Audi RS3 Quattro, Washington License CAM9063, VIN #WUABWGFF6J1906566, registered to Alexis Cruz Lopez, seized


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

while in the possession of Daniel Ibarra Loera from Public Storage Unit M005,10020 Martin Luther King Jr. Blvd South, Seattle, Washington; and

e. a sum of money, reflecting the property involved in the offense.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any such property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated. Defendant also agrees he will not assist anyone else who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of, or were used or intended to be used to facilitate, *Conspiracy to Distribute Controlled Substances*, the offense set forth in Count 1 of the Superseding Information, or was firearms and ammunition involved in *Possession of a Firearm in Furtherance of a Drug Trafficking Offense*, the offense set forth in Count 2, or was property involved in the *Conspiracy to Commit Money Laundering*, the offense set forth in Count 3

14. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the original indictment at the time of sentencing. In this regard, Defendant recognizes the United States Attorney's Office for the Western District of Washington has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant and/or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable). This includes any procedural challenges to the sentence, including any claim that the procedure employed at sentencing violated Defendant's constitutional rights.

Defendant also agrees that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation or a claim of prosecutorial misconduct based on facts unknown or not reasonably discoverable prior to entry of the judgment of conviction.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant acknowledges that certain claims, including certain claims for prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea, independently from this Plea Agreement. This waiver does not preclude Defendant from bringing an appropriate motion to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to claims not subject to the waiver, above) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, or Defendant withdraws from this Plea Agreement after it has been accepted by the Court, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office; or (3) thirty days following the grant of a motion to withdraw from the Plea Agreement.

20. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 5th day of May, 2026.

DANIEL IBARRA LOERA
Defendant

JAMES CURTIS
Attorney for Defendant

VINCENT T. LOMBARDI
Assistant United States Attorney

CASEY S. CONZATTI
BRIAN J. WYNNE
Assistant United States Attorney



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970